UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAQUEL LEMUS SERVIN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No. 1:22-cv-01178-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 19). |

　　　　This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for disability insurance benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 13).

　　　　Plaintiff generally argues that "the ALJ's physical RFC is not supported by substantial evidence of record." (ECF No. 19 at 2).

　　　　Having reviewed the record, administrative transcript, parties' briefs, and the applicable law, the Court finds as follows.

//

//

1

## I. DISCUSSION

Plaintiff challenges the following RFC formulated by the ALJ:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except lift or carry occasionally 20 pounds frequently 10 pounds, sit or walk 6 hours of an 8 hour workday; stand or walk for about 6 hours of an 8 hour workday; sit about 6 hours of an 8 hour workday; push or pull occasionally with left lower extremity; occasionally climb, balance, stoop, kneel, crouch, or crawl; with left, minor, upper extremity frequent handling or fingering; avoid concentrated exposure to hazardous work environment.

(AR 25). Defendant argues that "the ALJ properly based the RFC finding on all the relevant evidence in the record as a whole, in compliance with the relevant regulation and ruling." (ECF No. 24, p. 5 n.4) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p).

### A. RFC

A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted). In reviewing findings of fact with respect to RFC assessments, this Court determines whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal citation omitted).

Plaintiff argues that the ALJ mischaracterized evidence on record regarding Plaintiff's improved symptoms and failed to acknowledge longitudinal treatment records from Plaintiff's primary care physician, orthopedic specialist, and neurologic specialist, which documented Plaintiff's worsening symptoms. (ECF No. 19, p. 11, 15-17). Specifically, Plaintiff contends that

the ALJ "fails to cite to any specific record among the nearly 65 pages of records in 'Exhibits 3 and 4F' [and] among the nearly 640 pages of additional records in Exhibits 1F through 2F (AR 353-355) and 5F through 23F (AR 426-1053), most of which are dated during or subsequent to March 2019 through July 2019[.]" (*Id.*, p. 11).

Here, the ALJ, as required, considered the medical evidence regarding Plaintiff's physical impairments, including Plaintiff's own reports and the findings of medical professionals who examined Plaintiff. (AR 25-29). Indeed, the ALJ chronologically discussed Plaintiff's medical history between January 2019 and April 2021, citing to many of the same exhibits that Plaintiff argues were ignored:

> The claimant was hospitalized in January 2019 for acute left lower leg weakness of unclear etiology as well as possible cerebrovascular accident. While hospitalized, she underwent extensive diagnostic workup. MRI of the brain showed minimal increase white matter signal is most likely associated with chronic small vessel disease; no acute infarct and cranial hemorrhaging mass or midline shift (Exhibit 8F/97). Cervical MRI revealed moderate degenerative changes most severe at C5-6 and C6-7; no cord abnormalities seen (Exhibit 8F/92). Lumbar MRI revealed minimal central disc bulge at L5-S1; there is no significant canal stenosis; foraminal narrowing present at L5-S1 (Exhibit 8F/95). MRI of the thoracic spine showed no evidence of cord impingement or cord signal abnormality (Exhibit 8F/94). She was discharged with a walker (Exhibit 8F/47).
>
> Examination findings on February 14, 2019 were notable for decreased motor strength on left lower extremity muscle (Exhibit 9F/55). Progress note dated February 19, 2019 showed the claimant had a front wheel walker that she was using after she was discharged home (Exhibit 4F/9). Nerve Conduction Study taken on May 3, 2019 demonstrated moderate right tibial and peroneal motor neuropathy, but EMG was normal (Exhibit 3F/9). MRI of the lumbar spine taken on May 10, 2019 showed disc protrusion/extrusion at L5-S1 has mildly increased with partial effacement of left S1 nerve root sheath (Exhibit 4F/30).
>
> Examination findings in June 2019 were notable for 5/5 strength except left upper and lower extremity which was 4/5, and her gait was normal (Exhibit 3F/13). Later that month she was found to have paresthesia of the left lower extremity along with 4/5 motor strength on the hamstring (Exhibit 9F/36). When seen in September 2019, the claimant reported improvement in her symptoms since starting physical therapy (Exhibit 3F/10). During an evaluation in April 2020, she continues to report improvement in her symptoms. On exam, motor strength was 5/5 except in the left upper and lower extremity, sensory intact, reflexes are 2+, and gait and station are normal (Exhibit 10F/6).
>
> MRI of the lumbar spine on May 6, 2020 demonstrated advanced degenerative changes in L5-S1, moderate left lateral recess stenosis and mild right foraminal stenosis (Exhibit 11F/3). During a follow-up visit in June 2020, she had a completely normal examination (Exhibit 15F/25). Office visit note dated July 1,

2020 showed she was seen for complaint of left leg weakness, right leg numbness, and mild low back pain. However, her daughter states that the claimant does yard work and gets scratches on her right leg and does not feel it (Exhibit 14F/7).

MRI of the thoracic spine taken July 6, 2020 showed no impingement (Exhibit 13F/7). Orthopedic examination on July 29, 2020 showed minimal bilateral lumbosacral and buttock pain, no radiating leg pain, no pain with range of motion of either hip, and decreased left hip flexion. Diagnostic assessment included low back pain, lumbar degenerative disc disease, left leg weakness, and right leg numbness (Exhibit 14F/3).

Still the physical exam in August 2020 was within normal limits, and notable for grossly intact motor and sensory exam (Exhibit 16F/9). The following month, she demonstrated full range of motion of all joints, 4/5 strength in left lower extremity, and antalgic gait (Exhibit 16F/7). Repeat MRI of the brain taken September 15, 2020 showed no acute infarct (Exhibit 13F/6). Notably, she was seen on September 23, 2020 at which time she exhibited normal gait (Exhibit 17F/6). Physical examination in October 2020 reveled grossly intact motor and sensory examination (Exhibit 23F/21).

When seen in December 2020, the claimant reported persistent right lower extremity numbness, but denied any worsening symptoms. More importantly, physical examination was within normal limits (Exhibit 23F/18). MRI of the lumbar spine taken in January 2021 demonstrated relatively stable appearance of the spine compared to the prior study with mild central disc bulging at L4-5 and left paracentral to lateral disc bulging and ridging at L5-S1 (Exhibit 18F/90).

While she reported progressively worsening lower extremity symptoms, musculoskeletal examination in March 2021 showed no joint deformity, erythema, or tenderness; and full range of motion of all joints, and normal gait (Exhibit 23F/11). She returned the following month, her lumbar spine radiculopathy with associated right lower extremity weakness is considered stable and not progressive per her report (Exhibit 23F/3).

In regard to the claimant's obesity, the record shows she weighs 136 pounds and she is 50" tall, which corresponds to a BMI of 38.30 (Exhibits 4F/28; 17F/5). In accordance with SSR 19-2p, I have considered the impact obesity has on limitation of function including the claimant's ability to perform routine movement and necessary physical activity within the work environment.

The consistency of the claimant's allegations regarding the severity of her symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence of record. Specifically, I find that the claimant's reported limitations are not completely consistent with the medical record. Although the claimant's degenerative disc disease may explain her reported limitations in walking, the claimant has not reported limitations in left upper extremity greater than those found in the residual functional capacity. For example, physical examination in April 2020 revealed strength is 5/5 in bilateral upper and lower extremities in proximal and distal muscle groups except left upper and left lower extremity which is 4/5; sensory examination is intact to light touch, temperature, and vibratory sense at bilateral upper and lower extremities; reflexes

> are 2+ bilaterally; gait and station is within normal limits (Exhibit 10F/6-7).
>
> The medical evidence indicates the claimant received routine conservative treatment for complaints of back pain with radiculopathy and left lower extremity weakness and numbness. The positive objective clinical and diagnostic findings since the alleged onset date detailed above do not support more restrictive functional limitations than those assessed herein.

(AR 26-28).

While Plaintiff argues that the record could support a different conclusion as to the evidence, this at most amounts to another "rational interpretation," meaning that "the decision of the ALJ must be upheld. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995). For example, Plaintiff argues Plaintiff's May 2020 MRI documented significant degenerative changes. (ECF No. 19, p. 14) (citing AR 730). However, the ALJ specifically discussed these findings, noting that while the MRI "demonstrated advanced degenerative changes in L5-S1, moderate left lateral recess stenosis and mild right foraminal stenosis," Plaintiff had a "completely normal examination" during her June 2020 MRI follow up. (AR 26-27) (citing AR 730 [MRI findings: "Advanced degenerative changes at L5-S1 and broad-based left paracentral disc osteophyte results in moderate left lateral recess stenosis and mild right foraminal stenosis. Mild spondylosis and small chronic appearing central disc protrusion at L4-5 results in mild bilateral lateral recess stenosis. The remaining upper lumbar disc levels are unremarkable."]; AR 786 ["grossly intact motor and sensory examination" in June 2020]).

Plaintiff also argues that the ALJ's conclusion is not supported by substantial evidence because the ALJ "cherry-picked" instances of normal physical examinations by Plaintiff's primary care physician, Dr. Ghafarizadeh, to support the RFC while ignoring evidence favorable to Plaintiff because those examinations took place during general care visits for hypertension and diabetes. (ECF No. 14, p. 17). An ALJ is not permitted to "selectively" rely on evidence to find a claimant not disabled, while "ignor[ing]" evidence favorable to the claimant. *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001). However, this is not a case where the ALJ impermissibly "cherry-picked" the record. Here, in addition to discussing Plaintiff's normal physical examinations, the ALJ also discussed other objective evidence such as an MRI of Plaintiff's lumbar spine taken in January 2021 which "demonstrated relatively stable appearance of the spine compared to the prior study with mild central disc bulging at L4-5 and left

paracentral to lateral disc bulging and ridging at L5-S1." (AR 27) (citing AR 936). More importantly, the ALJ did not ignore evidence favorable to Plaintiff, such as Plaintiff's reports of "progressively worsening lower extremity symptoms," and more recent medical documentation of Plaintiff's "lumbar spine radiculopathy with associated right lower extremity weakness." (AR 27) (citing AR 1042-3).

Although Plaintiff argues the ALJ in erred in finding Plaintiff capable of standing and/or walking 6-hours of an 8-hour workday, Plaintiff fails to show that the evidence warranted even further limitations than the ALJ assessed. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009) (rejecting challenge to RFC determination where the claimant did "not detail what other physical limitations follow from the evidence of his knee and should injuries, besides the limitations already listed in the RFC"). Plaintiff argues that Dr. Ghafarizadeh's medical source statement supported further limitations in Plaintiff's ability to sit, stand, and walk. (ECF No. 19, p. 18). However, as discussed further below, the ALJ did not err in finding this opinion to be not persuasive. Further, the Court notes that Plaintiff does not challenge the ALJ's RFC assessment regarding the weight the ALJ accorded to Plaintiff's testimony and the lay witness testimony, the ALJ's Step Three determination that Plaintiff's impairments did not meet or equal a listed impairment, or the ALJ's reliance on the VE's testimony at Step Five. And as discussed further below, the ALJ did not err in considering the medical opinions of the state agency consultants or Plaintiff's primary care physician.

Plaintiff briefly argues the ALJ failed to develop the record by not ordering a physical consultative examination. (ECF No. 19, p. 21 n.12). However, the ALJ was under no duty to do so in this case as the ALJ had access to medical records dating back several years and multiple consultative opinions. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."); *see also Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (finding further development unnecessary when the available record included years of mental health records and multiple opinions from non-examining medical providers).

Accordingly, the Court finds that RFC assessed by the ALJ to be supported by substantial

evidence.

### B. Medical Opinions

Plaintiff also argues the ALJ's RFC assessment is not based on substantial evidence because the ALJ erred in assigning more weight to the medical opinions of the state agency consultants, Dr. Bobba and Dr. Amado, than the medical opinion of Plaintiff's primary care physician, Dr. Ghafarizadeh. (ECF No. 19 at 10-11, 15-17).

Because Plaintiff applied for benefits in 2019, certain regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017, govern this case. 20 C.F.R. §§ 404.1520c, 416.920c. (AR 21). These regulations set "supportability" and "consistency" as "the most important factors" when determining an opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assignment of specific "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

As for the case authority preceding the new regulations that required an ALJ to provide clear and convincing or specific and legitimate reasons for rejecting certain medical opinions, the Ninth Circuit has concluded that it does not apply to claims governed by the new regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . . how persuasive'

7

it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792.

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence. *Id.* § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim. *Id.* § 404.1520c(c)(2).

*Id.* at 791-92.

The ALJ found the opinions of the state agency consultants to be persuasive "because they are consistent with the record as a whole, supported with relevant explanation and citation to the record, based on their review of the available medical evidence, and the state agency medical consultants have disability program knowledge/expertise. For example, the claimant has reported improvement in her symptoms since starting physical therapy as well as improvement in strength (Exhibits 3F; 4F)." (AR 29). Plaintiff argues the ALJ failed to address the supportability factor in finding these opinions to be persuasive because the ALJ did not cite to any specific record within Exhibits 3F and 4F. However, elsewhere in the ALJ's decision, the ALJ specifically cited and referenced these exhibits as evidence of Plaintiff's mild and improved symptoms. (AR 26) ("Examination findings in June 2019 were notable for 5/5 strength except left upper and lower extremity which was 4/5, and her gait was normal (Exhibit 3F/13)."); *id.* ("When seen in September 2019, the claimant reported improvement in her symptoms since starting physical therapy (Exhibit 3F/10)."). Accordingly, the ALJ's credibility finding regarding these opinions is legally sufficient.

The ALJ discussed the medical opinion of Plaintiff's primary care physician, Dr. Ghafarizadeh as follows:

> In December 2019, Dr. Bahareh Ghafarizadeh, claimant's primary care physician, opined that she could return to work with no restrictions on June 19, 2020 (Exhibit 7F/9). I find this opinion somewhat persuasive because the examination appears to be related to diabetes only (see Exhibits 7F; 15F-16F; 23F). Dr. Ghafarizadeh completed a medical source statement in July 2020 in which he found the claimant is not able to perform her essential job functions with or without reasonable accommodations for six months. Dr. Ghafarizadeh indicated that the claimant has been suffering from lumbar spine radiculopathy with significant changes of lower extremity that is not able to stand for a long period of time. Dr. Ghafarizadeh

> further opined that the claimant is not currently able to perform her job duties due to current medical condition. Dr. Ghafarizadeh noted that the claimant's medical condition commenced January 16, 2019 (Exhibit 15F/16-17). This opinion is rendered to determine FEHA/ADA/ADAAA eligibility and not based on SSA disability criteria and states only that the claimant cannot return to past employment (agricultural packer/sorter), without clear description of limitations for six months following January 16, 2019. Additionally, this opinion is inconsistent with Dr. Ghafarizadeh's opinion at Exhibit 7F/9 above. As a result, I find this opinion is not persuasive.
>
> . . .
>
> Dr. Ghafarizadeh completed a medical source statement in March 2021 in which he opined that the claimant could sit for 30 minutes at one time, and stand for 10 minutes at one time; she can sit, stand/walk less than two hours; she needs to be able to shift positions at will; she needs to walk around every 10 minutes for 5 minutes; she needs to elevate her legs to knee level for 70% of an eight hour workday; she must use a cane or hand-held device due to imbalance and weakness; she can occasionally lift less than 10 pounds and rarely lift 10 pounds; she can occasionally twist, rarely stoop/bend, crouch/squat and climb stairs, and never climb ladders; she would be off task 25% or more; she is capable of low stress work; and she would be absent more than four days per month due to her impairments (Exhibit 23F/7-10). Dr. Ghafarizadeh's opinion is not persuasive because it is not consistent with the record, and it is not supported by the treatment notes. Further, it is inconsistent with previous descriptions of limitations, does not state when described limitations first applied, but would have to been after the December 17, 2019. Moreover, recent treatment notes show the claimant's reports of improvement in her symptoms as well as essentially normal examinations (Exhibits 16F-17F; 23F).

(AR 28-29).

As reflected in these passages, the ALJ articulated how he considered the medical opinions of Dr. Ghafarizadeh and how persuasive he found them. He also explained how he considered the supportability and consistency factors in reaching these findings. In particular, he explained that Dr. Ghafarizadeh's opinions were inconsistent with the medical record as a whole and inconsistent with Dr. Ghafarizadeh's contemporaneous examination findings. Additionally, the ALJ explained that Dr. Ghafarizadeh's proposed limitations were more extreme than supported by the record. (AR 29) (generally citing AR 1032-1058). For example, Dr. Ghafarizadeh opined in March 2021 that Plaintiff should be limited to sitting only for 30 minutes at one time and standing only for 10 minutes at one time, but Dr. Ghafarizadeh's own treatment notes from March 2021 document only slightly abnormal physical findings. (AR 1043) (noting "no joint deformity, erythema, or tenderness", "Full ROM all joints", "Normal gait" and

"right lower extremity strength 4/5 with numbness of the right thigh"). And as discussed above, the ALJ did not impermissibly "cherry-pick" medical records from Dr. Ghafarizadeh. Accordingly, the ALJ's credibility finding regarding the medical opinions of Dr. Ghafarizadeh is legally sufficient.

Thus, the ALJ did not err in the weight given to the medical opinions of the state agency consultants or Plaintiff's primary care physician.

## II.     CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is affirmed. The Clerk of Court is directed to enter judgment in favor of the Commissioner of Social Security and to close this case.

IT IS SO ORDERED.

Dated:   **March 25, 2024**                          /s/ Erica P. Grosjean
                                                     UNITED STATES MAGISTRATE JUDGE